## FIRST NAT. BANK OF HOUSTON, HOUSTON, TEX., et al. v. SCOFIELD, Collector of Internal Revenue.

### Civil Action No. 1287.

District Court, S. D. Texas,
Houston Division.

July 16, 1945.

Edward S. Boyles and M. U. S. Kjorlaug, both of Houston, Tex., for plaintiffs.

Brian S. Odem, U. S. Atty., and Miles L. Moss, Asst. U. S. Atty., both of Houston, Tex., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to Atty. Gen., for defendant.

KENNERLY, District Judge.

This is a suit by plaintiff, The First National Bank of Houston, Houston, Texas (for brevity called Taxpayer), and its successor, First National Bank in Houston (for brevity called Successor Taxpayer), against defendant, Collector of Internal Revenue (for brevity called Collector), to recover $21,316.49, plus $3,118.92 interest, claimed by plaintiffs to have been unlawfully and under protest paid September 14, 1940, to Collector as income tax and interest for the year 1937. Plaintiffs also sue for interest from the date of payment.

The basis of plaintiffs' claim is that in 1931 the Public National Bank and Trust Company of Houston (for brevity called Public National) was, because of financial difficulties, about to close its doors. A

number of other banks and business institutions, including taxpayer, in order to prevent such failure, raised a Guaranty Fund (sometimes called Contingent Fund) of $1,200,000, and arranged for and contracted with the National Bank of Commerce of Houston (for brevity called Liquidating Agent) to take over the Public National. Taxpayer furnished $150,000 of the Guaranty Fund, which was not returned to it, but was lost by it, and was claimed as a deduction in its income tax return for 1937. The Commissioner of Internal Revenue refused to allow such deduction and assessed against the Taxpayer such taxes, amounting to $21,316.59, and interest thereon, amounting to $3,118.92. In the Commissioner's letter of June 12, 1940, assessing such taxes, the following wording appears:

"(a) The amount of $150,000 contributed by you to the liquidating agent of the Public National Bank and Trust Company of Houston in 1931 and deducted as a loss under Item 24 of the Income and Excess-Profits Tax Return filed for 1937, is disallowed for the reason that it is held not to be a loss sustained in 1937."

Taxpayer's claim for refund was refused by the Commissioner, and this suit followed.

The facts are substantially as follows:

(a) Most of the facts have been stipulated by Stipulation filed March 29, 1945, and a supplemental stipulation, to which stipulations and the exhibits attached reference is made.

(b) After October 26, 1932, and until liquidating agent made its report (November 8, 1937), taxpayer had no information from liquidating agent respecting the liquidation of Public National.

(c) After receiving liquidating agent's report (November 8, 1937), taxpayer examined it, accepted it as correct, and thereafter had no further claim for a return of its $150,000, or any part thereof, and sustained a loss of the full amount thereof.

(d) Taxpayer sustained a loss during the year 1937 and after November 8, 1937, of such sum of $150,000, which was not compensated by insurance or otherwise.

1. It is clear that taxpayer sustained a loss of its $150,000. Whether such loss was sustained in 1937, the year taxpayer deducted it in its income tax return, depends on the meaning of the liquidating agreement between Public National and Liq-

uidating agent, the agreement between taxpayer and the liquidating agent, and the action of the parties under such agreements. In the liquidating agreement, dated October 26, 1931, there is no definite time fixed for liquidating the Public National. It is said (Paragraph IV) in part:

"Liquidating Agent hereby accepts its appointment hereunder as such and agrees to proceed with all due and reasonable diligence to liquidate said Public National and to collect and reduce to cash all of the assets of said Association coming into its possession or so much thereof as may be realized upon, and after deducting actual expenses of liquidation then unpaid, as well as any other moneys or funds theretofore advanced by Liquidating Agent under the terms hereof, the net cash proceeds so collected and realized shall be promptly applied as a credit on Public National's obligation."

The agreement between taxpayer and the liquidating agent is in the form of a letter, dated October 27, 1931, from taxpayer to liquidating agent, and provides in part with respect to the $150,000:

"Said payment is made with the understanding and agreement that it is a part of a total fund of approximately $ 1 200 000 paid to you by the undersigned and other subscribers for the purpose of indemnifying you against loss, if any, you may sustain in the liquidation of said Public National Bank & Trust Company.

"It is contemplated that the liquidation by you of said Public National Bank & Trust Company will be fully completed within one year from the date hereof. If, in working out such liquidation, it is not practicable to finish same within said one year period, then such additional time as may be necessary to complete the liquidation may be taken, provided, however, that liquidation shall be finally completed and report made to the subscribers of the indemnity fund at such date as may be reasonably practicable under all the circumstances.

"Said indemnity fund is for the following purposes:

"(a) If, in liquidating Public National Bank & Trust Company, you sustain losses equal to or exceeding said indemnity fund of approximately $1 200 000, then the full amount of said fund shall belong to you;

"(b) If, in liquidating Public National Bank & Trust Company, you sustain no

loss or sustain a loss less than the sum of $1 200 000, then and in either event the amount of said indemnity fund remaining in your hands shall be repaid to the subscribers of said fund on the same prorata basis as such subscribers contributed to such fund;

"(c) Final settlement with the subscribers shall be made when the liquidation is fully completed; provided, however, that if at any time the indemnity fund in your hands exceeds the liability of Public National Bank & Trust Company assumed by you, less the amount then or theretofore realized by you from the assets of Public National Bank & Trust Company taken over by you, then and so often as any such excess exists you will refund such excess to the subscribers of the aforesaid prorata basis."

The stipulation shows the steps taken by the liquidating agent in liquidating the Public National, and it is perfectly clear therefrom, and from the evidence, that the liquidation was not completed and report made showing that taxpayer would not receive back its $150,000, until November 8, 1937.

Paragraphs 14 and 15 of the stipulation filed March 29 1945, show the final steps in the liquidation. They are as follows:

"On August 12, 1937, the receiver of the Public National Bank and Trust Company, filed a petition in this Court, in cause entitled 'In the matter of the Liquidation and Winding Up of the Affairs and Business of The Public National Bank and Trust Company of Houston, Insolvent—No. 763 In Equity', in which it is shown, among other things, that with respect to the judgments, hereinbefore referred to, obtained against stockholders of the Public National Bank and Trust Company upon their statutory stockholders' liability there remained uncollected and unsatisfied the sum of $65,006.12 of the judgments obtained in 1933; $276,687.13 of those obtained in 1934; all of those obtained in 1935; and all of those obtained in 1936. The receiver asked permission and approval of the Court to sell and transfer to The National Bank of Commerce the said judgments, claims and demands against the stockholders upon the crediting by the said Bank on its claim against the Public National Bank and Trust Company of the sum of $38,003.38. On August 27, 1937, this Court entered an order authorizing and approving the sale and transfer, which, thereupon, was made.

"On November 8, 1937, the National Bank of Commerce prepared a 'Final Statement-Public National Bank and Trust Company Liquidation,' showing that it had sustained a loss of $373,278.79 over and above the guaranty fund of $1,200,000.00, a copy of said statement being hereto attached, marked Exhibit F, and made a part of this stipulation."

Exhibit F shows on its face that it is a final statement, and the Guaranty or Contingent Fund of $1,200,000 is shown deducted, indicating that taxpayer was not to receive back its $150,000. No such deduction is shown in previous statements.

While the witness for the Government, R. P. Doherty, Executive Vice-President of the Liquidating Agent (National Bank of Commerce), testified that his bank thought that its contribution ($125,000) to the Guaranty Fund was lost and "charged it off" in 1931, and while he said that he felt that the liquidation of the Public National was "finished" in 1933, at which time as stated in the stipulation the liquidating agent bought certain assets of the Public National and "appropriated the entire amount of the Guaranty Fund of $1,200,000," he also on cross examination testified:

"Q. Mr. Doherty, I want to clear up one other thing. When you say you bought the assets in 1933, I think you used the expression on direct examination that you thought more or less that was the end of the matter. A. With the exception of what might be realized from the stockholders' assessments and some judgments that the receiver had.

"Q. Now then, I don't mean to be critical at all. Apparently you did report to your cestui que trust just mentioned that this thing was finally finished. A. Yes.

"Q. And if you had felt that it was finished in 1933, you would have so reported? A. That is right.

"Q. And the fact is that it was not and you still collected some stockholder liabilities and the judgments? A. Collected stockholders' assessments up to October 1937.

"Q. And when you got the last one in, you made your report? A. The receivership was closed on October 22, 1937, and we made our report October 30, 1937.

"Q. And until October or November 1937, as I have said, you did not consider your trust had been completed, did you? A. No.

"Q. And you made report as soon as you did consider it completed? A. Yes, sir."

That taxpayer and its officers so understood and viewed the agreements and administration thereunder is certain.

The agreements created a trust with the liquidating agent as trustee, and the taxpayer was not bound by any action of such agent or trustee until a full report was made to it and it knew all the facts. When the report was received (November 8, 1937), the taxpayer had the right to object to all or any part of it, to sue to set it aside, wholly or in part, and there could be no loss until taxpayer expressly or impliedly approved what the agent or trustee had done. Taxpayer was not bound by rumors, newspaper reports, or the action of other subscribers to the Guaranty Fund.

I conclude that taxpayer sustained such loss of $150,000 during 1937 and after accepting the action of the liquidating agent or trustee, as shown by its Report of November 8, 1937, and that such loss was properly deducted in making its Income Tax Return for 1937.

Defendant seems to place great reliance on the action of other banks who contributed to the Guaranty Fund with respect to charging off or claiming as a deduction their contribution, but I think the evidence on that point of no great value. Each seems to have done some long range guessing.

Defendant also insists that the most that can be said is that the loss of the taxpayer's $150,000 was ascertained in 1937, and that it was not sustained in 1937, but if at all, very much earlier. I think it perfectly clear that it was sustained in 1937.

Judgment for plaintiffs.